**MAGID, Plaintiff-Appellant, v. CLEVELAND HEIGHTS (City) et, Defendants-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24127. Decided June 28, 1957.

Roudebush, Adrion, Brown, Corlett & Aldrich, for plaintiff-appellant.
King A. Wilmot, Director of Law, for defendants-appellees.
Hahn, Loeser, Keough, Freedheim & Dean, for Amici Curiae.

(HUNSICKER, PJ, DOYLE and STEVENS, JJ, of the Ninth District, sitting by designation in the Eighth District.)

## OPINION

By HUNSICKER, PJ.

This is an appeal on questions of law from a judgment of the Common Pleas Court of Cuyahoga County, Ohio.

Sam D. Magid, the appellant, as a resident taxpayer, filed an injunction action against the City of Cleveland Heights, Ohio, herein called city, and its various officials. In this action Mr. Magid asked that "amended and substitute ordinance No. 73-1953, as amended," of Cleveland Heights be determined to be invalid, and that an order of injunction issue to the city officials enjoining them from taking any action with reference to such ordinance.

The case was tried in the trial court upon an agreed statement of facts and the exhibits offered by the parties.

The facts are that: Cleveland Heights is a charter city, which adopted, many years ago (1921), a comprehensive zoning plan for the entire city; on December 20, 1954, the council of the city passed "amended and substitute ordinance No. 73-1953, as amended"; this ordinance accomplished the rezoning of an area of 147 acres known as "Longwood," the home of the Severance family; prior to the enactment of ordinance No. 73-1953, "Longwood" was zoned for single-family residence use only; ordinance No. 73-1953 created a new use classification known as 3CP (commercial-professional); and it is to this new use classification, and the claimed effect that it has upon "Longwood" and surrounding property, that the action for injunction is directed.

After judgment was awarded in the Court of Common Pleas to the city of Cleveland Heights, Mr. Magid appealed to this court, saying that the trial court erred:

"1. In overruling plaintiff's motion for new trial.

"2. In rejecting evidence offered by plaintiff at the trial hereof, to the prejudice of plaintiff.

"3. In determining that the ordinance constituting the substance of this action was lawfully enacted.

"4. In determining that the ordinance constituting the substance of this action established a lawful zoning use classification.

"5. In determining that the Board of Control, created by the ordinance constituting the substance of this action, is a lawful board with lawfully delegated powers.

"6. In determining that the procedures provided in the ordinance constituting the substance of this action are lawful.

"7. In rendering judgment manifestly against the weight of the evidence."

At the beginning of our consideration of this case, it should be noted that the owners of Longwood are not objecting to the ordinance herein, but the action to declare the ordinance (73-1953) invalid is

prosecuted by a neighboring landowner as a taxpayer resident of the city of Cleveland Heights.

The city of Cleveland Heights, by its charter provisions, has all powers of local self-government. The power of the city, with respect to control of matters within its corporate boundary, is set out in Article II of the charter, which is as follows:

"ARTICLE II. POWERS

"The city of Cleveland Heights shall have all powers of local self-government now or hereafter granted to municipalities by the Constitution and laws of Ohio, and such further powers as may now or hereafter be granted by the laws of Ohio; and all such powers shall be exercised. in the manner prescribed by this charter or by ordinances of the Council created hereby."

The legal rules which must guide our consideration of this case have been stated in an excellent review of the authorities by Judge Hurd, in the case of **Cleveland Trust Co. v. Brooklyn, 92 Oh Ap 351,** wherein the court said:

"1. All zoning laws and regulations must find their justification in some aspect of the police power asserted for the public welfare. Such laws and regulations must be considered as a valid exercise of police power if substantially related to public health, safety, morals or welfare.

"2. The power of a municipality to establish zones and to classify property accordingly, is purely a legislative function which will not be interfered with by the courts, unless such power is exercised in an arbitrary, confiscatory and unreasonable manner in violation of constitutional guarantees.

"3. The presumption of validity which attaches to legislative acts in general applies with equal force to zoning ordinances and regulations and the facts to justify interference by courts with the legislative function must clearly appear from the evidence. If the legislative classification for zoning purposes is fairly debatable the legislative judgment must be allowed to control.

"4. Granting the jurisdiction of a court in a particular case to determine the validity of the whole or any part of a zoning ordinance in appropriate proceedings, such jurisdiction is limited to finding such regulation valid or invalid, and the court may not determine the ultimate classification of the zoned area or substitute its judgment for that of the legislative body."

The power of the city to enact zoning regulations and to amend such regulations is not controverted. Specifically, it is claimed that council did not comply with the procedure for amendment of the zoning regulations set out in Title Three, Chapter 13, Sec. 1113.01 and Sec. 1113.02 of the Zoning Code, which sections are as follows:

Sec. 1113.01:

"The City Council may amend, revise, rearrange, renumber, or recodify this Code or any of the provisions hereof at any time and from time to time upon its own motion or upon recommendation of the City Planning Commission or upon petition, **after holding a public hearing upon the proposal** of which not less than thirty days' prior notice has

been given by publication at least once in a newspaper of general circulation in the City. However, **such proposal, prior to action thereon, shall be referred to the City Planning Commission** for its consideration and recommendation. The Commission shall be allowed a reasonable time, not less than thirty days, for its consideration and recommendations. (Emphasis ours.)

Sec. 1113.02:

"If the City Planning Commission shall have made a recommendation for action by the City Council upon such proposal within such thirty-day period or thereafter but prior to voting by the City Council upon the proposal, no action shall be taken by the City Council contrary to such recommendation except by the concurring votes of not less than three-fourths of the members of the City Council. **Any such proposal may be amended prior to the voting thereon by the City Council without further notice or postponement if such amendment to the proposal shall be germane to the subject matter thereof and is in accord with the recommendation of the City Planning Commission.**" (Emphasis ours.)

On August 17, 1953, ordinance No. 73-1953 was introduced in the council of the city of Cleveland Heights by the mayor of the city, and then referred, on August 21, 1953 (in compliance with Sec. 1113.01 of the Zoning Code), to the planning commission of the city.

Thereafter, numerous communications and discussions were had with reference to this ordinance by the mayor of the city, the city council, the planning commission, and interested parties.

On January 18, 1954, an amended and substitute ordinance No. 73-1953 was given its first reading in council.

The planning commission, the city council and interested parties had many discussions within their respective bodies concerning the purpose and effect of the ordinance.

A public hearing on the amended and substitute ordinance No. 73-1953 was duly advertised to be held on April 12, 1954, and such notice contained a full and complete copy of the amended and substitute ordinance.

At that hearing a number of reports from interested organizations were read, and official note was taken of such meeting at the April 19, 1954, meeting of the city council. Two public meetings on the subject matter of the ordinance were held thereafter by the city planning commission—one on April 19, 1954, and one on May 18, 1954.

On May 24, 1954, a joint meeting of the city council and the city planning commission was held for the purpose of discussing and considering amended and substitute ordinance No. 73-1953. Other interested persons were present at this meeting.

On June 11, 1954, the city planning commission approved amended and substitute ordinance No. 73-1953 and recommended its adoption by the city council, "and further that the changes set forth in the draft of proposed amendments dated June 5, 1954, be approved in principle subject to adoption by city council."

On June 21, 1954, the amended and substitute ordinance No. 73-1953

was given its second reading after the mayor of the city reported that there was as yet no general agreement on the form and effect of the proposed amendments.

Thereafter, many discussions and communications were had between the council, the planning commission, and national planning organizations and interested parties, with reference to methods of safeguarding, by appropriate legislation, the interests of the city in the new zoning classification known as a 3CP use.

As a result of these discussions and communications, the ordinance as advertised was amended to include the recommendations of the city planning commission and became known as "amended and substitute ordinance No. 73-1953, as amended."

This latest ordinance was then presented to city council on September 20, 1954, and referred to the city planning and building committee of council, who thereafter recommended the adoption of such "amended and substitute ordinance No. 73-1953, as amended." This recommendation was accepted by the city council, and such latest version of the ordinance was, by unanimous consent of council, given its final reading and adopted by a unanimous vote of the full city council.

Is "amended and substitute ordinance No. 73-1953, as amended," a valid ordinance; or was the ordinance, as originally advertised (amended and substitute ordinance No. 73-1953), approved by the city planning commission, and upon which a public hearing was had, so changed by the last amendments that such latest ordinance became, in effect, a new legislative proposal that required, in order to make it valid, publication, reference to the planning commission, and a public hearing?

When we consider Sec. 1113.02 of the Zoning Code, set out above, we find that "any such proposal may be amended prior to the voting thereon by the city council without further notice or postponement **if such amendment to the proposal shall be germane to the subject matter thereof and is in accord with the recommendations of the City Planning Commission."** (Emphasis ours.)

If the amendment of "amended and substitute ordinance No. 73-1953" was "germane to the subject matter" of the "amended and substitute ordinance No. 73-1953," and such amendment was "in accord with the recommendation of the city planning commission," then such later amendment was proper, and we must determine that the ordinance is a valid enactment of the council of the city of Cleveland Heights.

In the agreed statement of facts, we find that the final draft of this ordinance contained the amendments suggested by the planning commission when they approved the amended zoning plan.

Our examination of the amendments also shows that these latest amendments were "germane to the subject matter" of the proposal which the planning commission had under consideration when their recommendation was made to the city council.

On the original proposal to amend the zoning ordinance as it applied to Longwood, a full public hearing was had. All the regulations of the city, with reference to a public hearing, were properly completed.

We also determine that the amendment of the zoning ordinance,

as accomplished by "amendment and substitute ordinance No. 73-1953, as amended," did not constitute spot zoning. **State, ex rel. Kangesser Co., v. Beachwood Village, et al., 72 Abs 73.**

In the ordinance under discussion herein, the city has, in reality, established a zoning plan within a zoning plan. Only one other property within the present city limits can meet the requirement of the newly-created class 3CP district, and that property is used as a golf course.

It is thus apparent that the newly-created class 3CP was designed to take care of Longwood, and to guarantee, so far as such legislation can, that the surrounding territory will not be unduly harmed by the proposed new development.

It was for this and other apparent reasons that certain safeguards, by way of restrictions on use and a requirement for submitting a land-use plan, were written into the Zoning Code by amendments made after the planning commission had approved the general design and Code change.

The planning commission recommended in their June, 1954, meeting, and in their August, 1954, meeting, that certain amendments be made in the ordinance. The report of the planning commission discloses action then taken providing that if the amendments proposed in the August meeting were adopted, the planning commission then recommended the adoption by the city council of "amended and substitute ordinance No. 73-1953, as amended." These proposed amendments of the planning commission were written into the ordinance as finally adopted.

The changes thereafter made in the ordinance were minor changes, and were properly within the procedural requirement set out in the Zoning Code.

The creation of a board of control, as provided for in this ordinance, did not change the substance of the ordinance, only the method whereby the restrictions on the use of land in a class 3CP district can be regulated, supervised and enforced. Nothing unlawful has been done by the creation of this supervisory board of control. It is an administrative measure designed to secure a continuity of enforcement of the provisions of a class 3CP district, and not a delegation of legislative powers. The ultimate control of the use plan for the 3CP use districts remains with the city council by the terms of the ordinance. **L. & M. Investment Co. v. Cutler, et al., 125 Oh St 12; McCloud v. Woodmansee, Bldg. Commr., et al., 165 Oh St 271; McCauley v. Ash, et al., 97 Oh Ap 208.**

The original proposal that was submitted to council and which was advertised, and upon which a public hearing was had, called for a change in the zoning status of Longwood from a single-family residence-use district into a separate and different use district. The details by which such new use district, known as 3CP, would be preserved and supervised, was, through many amendments, finally made a part of the original proposal; i. e., the change from one use district classification to another.

We think the city had the power to make the change of use classification, and to thereafter make the amendments which were finally adopted

as a part of the original proposal, without further and additional advertisement and public hearing.

We find that "amended and substitute ordinance No. 73-1953, as amended," has a direct and reasonable relation to the health, safety, morals and general welfare of the city of Cleveland Heights, Ohio.

We have examined all of the claimed errors, and find none prejudicial to the substantial rights of the appellant.

The judgment of the trial court must be affirmed.

Judgment affirmed.

DOYLE and STEVENS, JJ, concur.